**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

GENE M. COFFEEY,

                              Plaintiff,

                    v.                                              No. 9:14-CV-196
                                                                        (DNH/CFH)
N. HOLLENBECK; et al.,

                              Defendants.
_____

**APPEARANCES:**                              **OF COUNSEL:**

GENE M. COFFEEY
Plaintiff <u>Pro</u> <u>Se</u>
34611
CNYPC
P.O. Box 300
Marcy, New York 13403

HON. ERIC T. SCHNEIDERMAN          COLLEEN D. GALLIGAN, ESQ.
Attorney General for the                         Assistant Attorney General
State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff Gene M. Coffeey ("Coffeey" or "Plaintiff"), a resident of Central New York

Psychiatric Center ("CNYPC") who was, at all relevant times, in the custody of the New York

State Office of Mental Health ("OMH"), brings this action pursuant to 42 U.S.C. § 1983.  Dkt.

No. 1 ("Compl.").  Presently before the undersigned is defendants' motion for summary

---

    [1]  This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C.
§ 636(b) and N.D.N.Y.L.R. 72.3(c).

judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56. Dkt. No. 24. Coffeey did not oppose the motion. For the following reasons, it is recommended that defendants' motion be granted.

## I. FAILURE TO RESPOND

Coffeey failed to submit any opposition papers to defendants' motion for summary judgment. Coffeey requested an extension of time to file his response to the present motion. Dkt. No. 31. Despite the Court granting two extensions, Coffeey has not submitted an opposition to defendants' motion for summary judgment. Dkt. Nos. 32, 36. Coffeey was notified of the consequences of failing to respond to a summary judgment motion.[2] Dkt. No. 27. Given this notice and the two extensions for Coffeey to file opposition papers, it is readily apparent that Coffeey was adequately apprised of the pendency of the motion and the consequences of failing to respond. "Where a non-movant fails to adequately oppose a properly supported factual assertion made in a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute, even if that non-movant is proceeding *pro se*." Jackson v. Onondaga County, 549 F. Supp. 2d 204, 209 (N.D.N.Y.2008) (footnotes omitted).[3]

---

[2] Defendants' "Notice of Motion" indicated that, "[a] copy of the United States District Court, Northern District of New York 'Notification of the Consequences of Failing to Respond to a Summary Judgment Motion' is annexed hereto." Dkt. No. 24 at 1. No such notice was annexed to defendants' motion. The Court notified the plaintiff of the consequences of failing to oppose the motion. Dkt. No. 27.

[3] Coffeey's complaint is not verified and does not have the "force and effect of an affidavit." See Tafari v. Brown, No. 9:10-CV-1065 (GTS/DRH), 2012 WL 1098447, at *6 n.8 (N.D.N.Y. Mar. 30, 2012).

## II. BACKGROUND

In support of the motion, defendants filed a Statement of Material Facts.[4]  To the extent that the "facts" asserted by defendants are supported by the record, the undersigned will consider them in the context of the within motion.  The facts recited are for the relevant time period as referenced in the complaint.

## A.  Facts

The facts are related herein in the light most favorable to Coffeey as the nonmoving party.  See subsection III(A) infra.  At the time of the incidents described in the complaint, Coffeey was confined at CNYPC.  Dkt. No. 24-1 (Statement of Material Facts) ¶ 1.

---

[4] Local Rule 7.1(a)(3) states:

Summary Judgment Motions

Any motion for summary judgment shall contain a Statement of Material Facts.  The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits.

The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

N.D.N.Y. L.R.  7.1(a)(3).

**1. Coffeey's Confinement from May 28, 2013 through June 10, 2013**

On May 28, 2013, at approximately 5:36 a.m., Coffeey was observed skipping his turn for the shower. Dkt. No. 25 (Exhibit A to the Affirmation of Colleen D. Galligan ("Galligan Aff.")) at 8.[5] When he was confronted by staff, Coffeey became loud and argumentative. Id. On the same day, the Treatment Team Leader issued a "Loss of Privileges" report indicating that Coffeey would be last on the Unit Shower List, effective May 29, 2013. Dkt. No. 25-1 (Galligan Aff. Exh. A) at 48.

On May 30, 2013, at approximately 8:20 a.m., a Secure Care Treatment Aide ("SCTA") observed Coffeey become "verbally and physically assaultive once he was told about the restriction" imposed by the Treatment Team. Dkt. No. 25 at 20. Coffeey was "pointing and swinging his . . . closed fist."[6] Id. The SCTA "dropped the red phone" and plaintiff was directed to the "side room." Id. Plaintiff received medication and breakfast without further incident. Id.

On May 30, 2013, at 12:15 p.m., due to Coffeey's "threatening and impulsive behavior," a physician completed a "Physician Order Form - Constant Observation."[7] Dkt. No. 25-1 at 50-51. The Order would remain in effect until May 31, 2013 at 12:15 p.m. Id. The Order restricted Coffeey to "finger food" and removed him from off-ward activity.[8] Id. Coffeey was ordered to eat and sleep in the side room and was not permitted to use any sheets, pillow

---

[5] Citations to page numbers refer to the pagination generated by CM/ECF, not the page numbers generated by the parties.

[6] The aide who observed the incident and the aide involved in the incident with Coffeey are not defendants in this action.

[7] The physician is not a defendant in this action.

[8] Off-ward activity included the Activity Center and/or Treatment Mall. Dkt. No. 25-1 at 51.

4

cases, razors or pens. Id. at 50. The CNYPC Constant Observation Policy mandates that the "prescriber[,]" "must [reassess] the patient/resident at least every 24 hours, and write[] a new order . . . to extend Constant Observation." Dkt. No. 26 (Exhibit A to the Declaration of Anthony Gonzalez ("Gonzalez Decl.")) at 55.

On May 30, 2013, at approximately 2:06 p.m., plaintiff began "yelling" and "swearing" at an SCTA and insisted on eating in the dining room. Dkt. No. 25 at 22. Coffeey was "loud and argumentative" as he returned to his room.[9] Id. Later that evening, Coffeey told a nurse, "I feel like hurting myself." Dkt. No. 26-1 (Exhibit A to the Declaration of Nicholas Hollenbeck ("Hollenbeck Decl.")) at 5. Dr. Kaskiw was notified, spoke with Coffeey and prescribed medication.[10] Id.

On May 31, 2013, Coffeey was observed "mumbl[ing] indiscernibly, pac[ing] in the sideroom[,]" and "glar[ing] at [the] nurse." Dkt. No. 25 at 34. On May 31, 2013, due to plaintiff's "threatening and impulsive behavior," a physician renewed the Observation Order.[11] Dkt. No. 25-1 at 53-54. The Order imposed the same restrictions as the prior Order and remained in effect until June 1, 2013 at 12:15 p.m. Id. at 53.

On June 1, 2013, Coffeey required numerous prompts to wake for medication, ignored staff's requests and was argumentative. Dkt. No. 25 at 43. On June 1, 2013, due to plaintiff's "threatening and impulsive behavior," a physician renewed the Observation Order.[12] Dkt. No. 25-1 at 55-56. The Order imposed the same restrictions as the prior

---

[9] The SCTA and staff involved in this incident are not defendants in this action.

[10] The nurse and Dr. Kaskiw are not defendants in this action.

[11] The physician who issued the Order is not a defendant in this action.

[12] The physician who issued the Order is not a defendant in this action.

5

Orders and remained in effect until June 2, 2013 at 12:15 p.m.  Id.  When Coffeey was advised of the decision, he cursed at staff.  Dkt. No. 25 at 43.

On June 2, 2013, Coffeey was upset because he slept in the side room.  Dkt. No. 25 at 44.  Coffeey became argumentative when staff explained the Constant Observation Order.  Id.  Due to plaintiff's "threatening and impulsive behavior," a physician renewed the Observation Order.[13]  Dkt. No. 25-1 at 57-58.  The Order imposed the same restrictions as the prior Orders and remained in effect until June 3, 2013 at 12:15 p.m.  Id.

On June 3, 2013, due to plaintiff's "impulsive" behavior, a physician renewed the Constant Observation Order.[14]  Dkt. No. 25-1 at 59-60.  The Order imposed the same restrictions as the prior Orders and remained in effect until June 4, 2013 at 12:15 p.m.  Id.

On June 3, 2013, at approximately 1:00 p.m., Coffeey was evaluated by a physician.[15]  Dkt. No. 25 at 3-5.  The physician discontinued the Constant Observation Order.  Id. at 4.  However, due to Coffeey's "threatening and daring" behavior, the physician placed Coffeey in the Motivation on Deck ("MOD") Unit and alternate sleep on Ward 504.[16]  Dkt. No. 25-1 at 47.  Coffeey refused to complete his behavioral chain analysis ("BCA") and refused to sign the MOD placement form.  Id.

On June 4, 2013, at 10:03 p.m., defendant SCTA Nicholas S. Hollenbeck ("Hollenbeck")

---

[13] The physician who issued the Order is not a defendant in this action.

[14] The physician who issued the Order is not a defendant in this action.

[15] The physician is not a defendant herein.

[16] According to CNYPC policy, a resident is placed in the MOD Unit when he provides assurances to staff that he is able to interact with residents and staff without posing a threat to security, but the resident has not maintained behavioral control for a sufficient duration and presents as unwilling to control other antisocial behaviors.  Dkt. No. 24-7 (Hollenbeck Decl. Exh. C) at 3.

was on duty in Ward 405 and observed plaintiff consume his dinner, shower and use the bathroom. Dkt. No. 25 at 69. Hollenbeck prepared a Progress Note indicating that, "[r]esident remains on ward 504." Id. Coffeey was asked whether he wished to utilize the day room and Coffeey declined. Id. Coffeey was given a pen to complete his BCA. Id.

On June 7, 2013, June 8, 2013 and June 10, 2013 Coffeey was confined to Wards 405 and 504. Dkt. No. 25-1 at 1-21; Dkt. No. 26 at 12-17.

### 2. Correspondence with Mental Hygiene Legal Services and Investigation

On June 7, 2013, Megan E. Dorr ("Dorr"), Esq., Senior Attorney at Mental Hygiene Legal Services, sent a letter to defendant Anthony Gonzalez ("Gonzalez"), Director of Risk Management at CNYPC. Dkt. No. 24-4 (Declaration of Anthony Gonzalez) ¶¶ 1-2; Dkt. No. 26 at 24. Dorr conveyed Coffeey's concerns regarding his confinement to the side room from May 29, 2013 through June 3, 2013 without sheets, blankets, pens or paper. Dkt. No. 26 at 24. Coffeey also claimed that he was not permitted to call his family, receive mail or correspond with his family or counsel. Id. Coffeey further asserted that he was not seen by a physician during this time frame and that he was unable to complete his BCA because he was not provided with any assistance. Id. Dorr asked Gonzalez to investigate the matter. Id. Dorr did not identify any staff member. Id.

Gonzalez treated the letter as a complaint and assigned Tad Adams ("Adams"), a Risk Management Specialist, to review the allegations and formulate a response.[17] Gonzalez Decl. ¶¶ 13-14. Adams reviewed Coffeey's treatment record including progress notes from

---

[17] Adams is not a defendant in this action.

his treatment team.  Dkt. No. 26 at 18.  Adams concluded that the decision to confine

Coffeey to constant observation and temporary restrictions was reassessed daily by a

physician in accordance with CNYPC policy.  Id. at 19.  On June 12, 2013, Adams

responded to Dorr and annexed a copy of his Patient Complaint Summary.  Id. at 18-19, 23.

 Adams advised Dorr that Coffeey was offered assistance with completing his BCA in a

group setting on Wednesday evenings.  Id. at 23.  In this clinician-facilitated group, Coffey

was afforded time to work on the BCA with staff assistance.  Id.

On June 12, 2013, Gonzalez received a second letter from Dorr, dated June 11, 2013.

Dkt. No. 26 at 4-5.  Dorr indicated that Coffeey "fear[ed] for his safety" because he reported

the alleged abuse to risk management.  Id. at 4.  Specifically, Coffeey reported to Dorr that,

on two occasions, Hollenbeck removed food from Coffeey's tray.  Id.  Coffeey claimed that

Hollenbeck unwrapped Coffeey's hamburger and bit a piece before offering it to Coffeey, ate

Coffeey's sandwich, and removed his milk.  Id.  Coffeey alleged that Hollenbeck threatened

him with returning Coffeey to ward 504, and physical assault, if he reported the incidents.

Id.  Dorr requested an investigation and suggested that Gonzalez "take steps to protect"

Coffeey from potential retaliation by staff members and to separate Coffeey from

Hollenbeck.  Id.   Gonzalez assigned the matter to Valerie Nester ("Nester"), a Risk

Management Specialist, for review.[18]  Gonzalez Decl. ¶ 18.

On June 12, 2013, Nester interviewed Coffeey.  Dkt. No. 26 at 1-2.  Coffeey executed a

written statement related to the incidents with Hollenbeck.  Id. at 6-8.  Coffeey claimed that

he was sent to Ward 504 on June 3, 2013 at 12:30 p.m.  Id. at 6. Coffeey was on Ward 504

---

[18] Nester is not a defendant in this action.

until June 6, 2013. Id. Coffeey asserts that on June 7, 2013, Hollenbeck ate his food and on June 8, 2013, Hollenbeck took a bite out of Coffeey's hamburger and gave his drink to another aide. Id. at 6-7. Coffeey stated that on June 10, 2013, Hollenbeck threatened him and told him not to tell anyone, "what went on up on 504." Id. at 7. Hollenbeck warned that Coffeey should "remember what [Hollenbeck] did to [him] last time [Coffeey was] on 401." Id. Coffeey alleged that Hollenbeck then "slammed" his head into a window screen and put his hands around Coffeey's neck. Id. at 7-8. Coffeey reported that there were no staff or resident witnesses to these occurrences. Id. at 8.

On June 19, 2013, Nester interviewed SCTA David Paulson ("Paulson"). Dkt. No. 26 at 1. Paulson executed a written statement indicating that he was working on Ward 504 on June 7, 2013 and June 8, 2013. Id. at 9. Paulson did not see anyone eat Coffeey's food or threaten Coffeey. Id. Paulson did not see Hollenbeck put his hands on Coffeey. Id.

On June 20, 2013, Nester interviewed Hollenbeck. Dkt. No. 26 at 1. Hollenbeck executed a written statement and asserted that he was not working on Ward 504 on June 7, 2013, June 8, 2013 or June 10, 2013. Id. at 10. Hollenbeck further claimed that he was not working on Ward 405 on June 10, 2013. Id. Hollenbeck conceded that he worked on Ward 504 for "a few shifts but [he] can't remember the exact dates." Id. Hollenbeck stated that he did not eat Coffeey's food, threaten Coffeey, or put his hands on Coffeey. Id.

On June 27, 2013, Nester interviewed SCTA Dan Wiginton ("Wiginton"). Dkt. No. 26 at 1. Wiginton executed a written statement stating that he was on Ward 504 for one shift when Coffeey was present. Id. at 11. Wiginton indicated that he "might have been working with SCTA Hollenbeck[.]" Id. Wiginton did not see Hollenbeck take Coffeey's food, threaten Coffeey or put his hands on Coffeey. Id.

On June 27, 2013, after interviewing witnesses and reviewing all pertinent documentation, Nester issued a report and concluded that there was no evidence to support Coffeey's contentions. Dkt. No. 26 at 2. On July 3, 2013, Gonzalez responded to Dorr advising that an investigation into Coffeey's complaint was completed and that the summary was available for her review, upon request. Id. at 3.

On August 30, 2013, Gonzalez received a letter from Dorr dated August 29, 2013. Gonzalez Decl. ¶ 26; Dkt. No. 26 at 21. Dorr expressed concern that Gonzalez "unilaterally downgraded" Coffeey's allegations without explanation. Dkt. No. 26 at 21. Dorr stated that Gonzalez did not follow procedures set forth in the OMH Manual for Special Investigations that required Gonzalez to consider the allegations "reasonably reliable[.]" Id.

On September 20, 2013, Gonzalez responded to Dorr stating that "each case is addressed on an individual basis and may not require the same level of investigation and analysis." Dkt. No. 26 at 20. Based upon the conclusions of two investigations conducted, Gonzalez determined that there was no evidence of neglect or abuse and that a special investigation was not warranted. Gonzalez Decl. ¶ 28.

## B. Procedural History

On February 26, 2014, Coffeey filed his complaint in this action. Dkt. No. 1. Upon review of Coffeey's complaint, the Court directed defendants to respond to the allegations in the complaint. Dkt. No. 8. On April 1, 2015, defendants filed the within motion pursuant to Fed. R. Civ. P. 56 seeking summary judgment and dismissal of Coffeey's complaint. Dkt. No. 24. Coffeey did not oppose the motion.

## III.  DISCUSSION[19]

In the complaint, Coffeey alleges that he was subjected to Fourteenth Amendment violations related to his conditions of confinement, food tampering, medical treatment and the use of excessive force.  See generally Compl.

### A.  Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact, it is supported by affidavits or other suitable evidence, and the moving party is entitled to judgment as a matter of law.  Fed R. Civ. P. 56(a).  The moving party has the burden to show the absence of disputed material facts by providing the court with portions of pleadings, depositions, and affidavits which support the motion.  Fed R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences drawn in favor of the non-moving party.  Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial, and must do more than show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  For a court to grant a motion for summary judgment, it must be apparent that no rational finder of fact could find in favor of the non-moving party.  Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994).

---

[19]  All unpublished opinions cited to by the undersigned in this Report–Recommendation are, unless otherwise noted, attached to this Report–Recommendation.

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the

non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477

(2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a *pro se*
> litigant is entitled to "special solicitude," . . . that a *pro se*
> litigant's submissions must be construed "liberally," . . . and
> that such submissions must be read to raise the strongest
> arguments that they "suggest,". . . At the same time, our
> cases have also indicated that we cannot read into *pro se*
> submissions claims that are not "consistent" with the *pro se*
> litigant's allegations, . . . or arguments that the submissions
> themselves do not "suggest," . . . that we should not "excuse
> frivolous or vexatious filings by *pro se* litigants," . . . and that
> *pro se* status "does not exempt a party from compliance with
> relevant rules of procedural and substantive law,". . .

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d

185, 191-92 (2d Cir. 2008).


## B.  Fourteenth Amendment

The rights of an involuntarily committed individual should be evaluated under the

standard applied to claims brought by pretrial detainees.  Buthy v. Comm'r of Office of

Mental Health of N.Y. State, 818 F.2d 1046, 1051 (2d Cir. 1987) (applying the levels of

protection afforded pretrial detainees under the due process clause to persons confined due

to an acquittal by reason of insanity or to their incompetence to stand trial).  The standards

when evaluating deliberate indifference to a person in custody are identical whether under

the Eighth or Fourteenth Amendment.  Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009)

("[Deliberate indifference] claims . . . should be analyzed under the same standard

irrespective of whether they are brought under the Eighth or Fourteenth Amendment."); see

also DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 199–200 (1989) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being . . . [including] food, clothing, shelter, medical care, and reasonable safety . . . .") (citations omitted).  Accordingly, cases analyzed under the Eighth Amendment provide guidance in analyzing cases considered under the Fourteenth Amendment.  As Coffeey was civilly committed during the relevant time period, his claims are more appropriately brought under the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment.

### 1. Conditions of Confinement

Coffeey contends that he was subjected to unconstitutional conditions of confinement when he was placed in a "side room" from May 29, 2013 through June 3, 2013 without sheets, blankets, pens, paper, or phone and mail privileges.  Dkt. No. 1 at 4.

"The Constitution does not mandate comfortable prisons but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citations omitted).  As with other Eighth Amendment claims, a "plaintiff must satisfy both an objective and a subjective test."  Jolly v. Coughlin, 76 F.3d 468, 480 (2d Cir. 1996).  Thus, "a prisoner may prevail only where he proves both an objective element—that the prison officials' transgression was sufficiently serious—and a subjective element—that the officials acted, or omitted to act, with a sufficiently culpable state of mind . . . ."  Phelps v. Kapnolas, 308 F.3d 180, 185 (2d

13

Cir. 2002) (internal quotation marks and citations omitted).  The objective prong can be satisfied by conditions of confinement which, in combination may constitute an Eighth Amendment violation, "'when each would not do so alone,'" such as "'when the conditions have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night combined with a failure to issue blankets.'" Davidson v. Murray, 371 F.Supp.2d 361, 370 (W.D.N.Y. 2005) (quoting Wilson v. Seiter, 501 U.S. 294, 304 (1991)).  However, "'[n]othing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.'" Id. (quoting Wilson, 501 U.S. at 305).

### a. Confinement Pursuant to Constant Observation Order

Coffeey's treatment team made the decision to confine him to the "side room" for four days due to Coffeey's abusive, threatening and impulsive behavior.  Dkt. No. 26-1 at 4-5; Dkt. No. 26 at 37-52.  The decision to renew the Order confining Coffeey to "constant observation" was made after Coffeey continued to display this behavior and threatened to harm himself.  Id.  The uncontroverted evidence before the undersigned establishes that Coffeey was monitored and reassessed daily, in accordance with CNYPC policy.  Dkt. No. 25 at 7, 15-19, 25-26, 28-56; Dkt. No. 26-1 at 4-10, 13, 16-18, 25, 31.  Based upon the record and Coffeey's documented behavior, his four day confinement in the "side room" did not amount to a constitutional violation.  See McMillian v. Cty. of Onondaga, No. 13-CV-1124 (TJM/ATB), 2015 WL 1403459, at *17 (N.D.N.Y. Mar. 26, 2015) (finding no constitutional violation as the plaintiff's behavior warranted "extra observation" and

contemporaneous records established that the plaintiff was supervised during his restricted confinement).

With respect to the conditions imposed during Coffey's side room confinement, i.e., the deprivation of sheets, blankets, pens, pencils and a loss of mail and phone privileges, (Compl. at 4), while the conditions may have been unpleasant, Coffey has failed to present any evidence establishing that the conditions posed a threat to his health or safety. See Inesti v. Hogan, No. 11 Civ. 2596(PAC)(AJP), 2013 WL 791540, at *25 (S.D.N.Y. Mar. 5, 2013) (holding that the plaintiff's constitutional rights were not violated when he was ordered to wear only a "smock" because he was "out of control") (citing Borges v. McGinnis, No. 03–CV–6375, 2007 WL 1232227 at *6 (W.D.N.Y. Apr. 26, 2007) (keeping inmate clothed only in paper gown and paper slippers with a thin mattress and no blanket in a room with an open window for three days did not meet the objective element of an Eighth Amendment violation where "plaintiff [did] not allege that he suffered anything more than frustration and discomfort")); see Ahlers v. Nowicki, No. 9:12-CV-0539 (DNH/RFT), 2014 WL 1056935, at *5 (N.D.N.Y. Mar. 18, 2014) (concluding that the claim by CNYPC resident that he was "forced to sleep on dirty sheets for four nights" was a minimal deprivation, at best). Coffey's allegation that he was denied pens, paper, mail and phone privileges are not deprivations that "violate the contemporary standards of decency." See Mills v. Luplow, No. 04-CV-00005(A)(M), 2009 WL 2606240, at *10 (W.D.N.Y. Mar. 31, 2009) (holding that a six day deprivation of law library services, recreation, television and access to grievance protocols did not violate the Eighth Amendment).

Even assuming that Coffey established that his conditions of confinement were objectively inhumane, summary judgment is nonetheless warranted based upon the lack of

any evidence that would permit a rational jury to conclude that Hollenbeck or Gonzalez were responsible or personally involved in the alleged unconstitutional conditions. "'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).

Conspicuously absent from Dorr's letter are the names or any identifying features of any individuals responsible for Coffey's conditions of confinement in the side room. Moreover, the record is void of any evidence establishing that Hollenbeck or Gonzalez were responsible or involved in the decision to confine Coffey to the side room or the restrictions imposed during that confinement. Hollenbeck asserts that he did not have any contact with Coffey until June 4, 2013. Hollenbeck Decl. (Dkt. No. 24-5) ¶ 21. Coffey has not come forward with any admissible evidence to suggest otherwise. Similarly, Gonzalez avers that he was not personally involved in any incident involving Coffey's confinement and had no knowledge of the confinement until after the Constant Observation Order was discontinued. Gonzalez Decl. ¶¶ 29-30. Coffey has failed to present any admissible evidence establishing what personal involvement Gonzalez had with respect to his confinement in the side room.[20] The progress records and daily logs contain names of various nurses, doctors, social workers and SCTAs who were involved in Coffey's treatment. None of these individuals are defendants herein.

Accordingly, the undersigned recommends that defendants' motion for summary judgment on this ground be granted.

---

[20] To the extent that Coffey's complaint could be construed as asserting a supervisory claim against Gonzalez, that claim is discussed infra.

## 2. Food Tampering

Coffeey asserts that on June 7, 2013 and June 8, 2013, Hollenbeck took food off of his tray, took bites out of his food and returned the food to Coffeey and directed him to "eat it[.]" Dkt. No. 1 at 4.

The Eighth Amendment requires that prisoners be provided with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983) (citation omitted); Brown v. Eagen, No. 9:08-CV-0009 (TJM/DRH), 2009 WL 815724, at *10 (N.D.N.Y. Mar. 26, 2009) (citations omitted); Midalgo v. Bass, No. 9:03-CV-1128 (NAM/RFT), 2006 WL 2795332, at *11 (N.D.N.Y. Sept. 26, 2006) (citations omitted). "Depriving an inmate of food or serving him contaminated food may constitute a violation of the Eighth Amendment." Moncrieffe v. Witbeck, No. 97-CV-253 (NAM), 2000 WL 949457, at *6 (N.D.N.Y. June 29, 2000) (citing Robles, 725 F.2d at 15) (additional citations omitted). Allegations of food tampering alone do not suffice to establish an Eighth Amendment violation; in addition, a plaintiff must allege that he suffered a "distinct and palpable injury[.]" M.F. v. Reish, No. 95 CIV. 4904 (SAS), 1996 WL 345953, at *4 (S.D.N.Y. June 21, 1996) (dismissing food tampering claims where plaintiffs allege numerous incidents of food tampering by defendants, but no allegations that they were actually harmed by such food) (quotation marks omitted) (citing Warth v. Seldin, 422 U.S. 490, 501 (1975)).

Here, Coffeey does not specifically allege where the alleged food tampering occurred.

The evidence establishes that Coffeey was confined in Wards 405 and 504 during the relevant time period. Dkt. No. 26 at 12-17. In his statement to Nester, Hollenbeck claimed that he was not working on Ward 504 on June 7, 2013 and June 8, 2013.[21] Id. at 10. The progress notes and daily logs from June 7, 2013 and June 8, 2013, related to Coffeey, lack any reference to Hollenbeck. See Dkt. No. 25 at 6; Dkt. No. 25-1 at 2-12. Even assuming that a triable issue of fact exists as to whether Hollenbeck was on duty on June 7, 2013 and June 8, 2013 on the ward where Coffeey was present, Coffeey has failed to present any evidence that he suffered from a "distinct and palpable injury" as a result of the alleged food tampering. Coffey's food tampering claims against Hollenbeck fail to rise to a level of constitutional significance and are therefore subject to dismissal. Accordingly, the undersigned recommends that defendants' motion for summary judgment on this ground be granted. See Harris v. Ashlaw, No. 9:07-CV-0358 (LEK/DEP), 2007 WL 4324106, at *5 (N.D.N.Y. Dec. 5, 2007) (dismissing the plaintiff's food tampering claim as the plaintiff failed to allege that he was served nutritionally inadequate food or that his food was served in a manner presenting danger to his health or well being).

---

[21] In Hollenbeck's June 20, 2013 signed statement, Hollenbeck stated, "I was not working Ward 504 on June 7th, 8th or 10th, nor was I working 405 on 6/10. I did work on Ward 504 for a few shifts, I can't remember the exact dates." Dkt. No. 26 at 10. In Hollenbeck's Declaration submitted in support of the within motion, Hollenbeck avers, "I was not working on the ward on June 7, 2013, June 8, 2013 or June 10, 2013." Hollenbeck Decl. ¶ 26. To the extent that Hollenbeck's statements in his Declaration are inconsistent or contradictory to the written statement he signed in June 2013, the Court will rely upon the statements made in June 2013. See Yevstifeev v. Steve, 860 F. Supp. 2d 217, 221 (W.D.N.Y. 2012) ("[T]he Court rejects plaintiffs' attempts to raise new issues of fact by submitting affidavits which contradict their deposition testimony and prior written statements, because 'factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not genuine issues for trial.'" (internal quotation marks and citations omitted)).

### 3. Deliberate Indifference to Medical Needs

Coffeey alleges that while he was confined for four days in the "side room[,]" he was not seen "regularly" by a doctor. <u>See</u> Compl. at 9.

An Eighth Amendment claim for medical indifference, has two necessary components, one objective and the other subjective. <u>See</u> <u>Hathaway v. Coughlin</u>, 99 F.3d 550, 553 (2d Cir. 1996). Deprivation of medical treatment is "sufficiently serious" if the injury is one where there is, "a condition of urgency, one that may produce death, degeneration, or extreme pain." <u>Hathaway v. Coughlin</u>, 37 F.3d 63, 66 (2d Cir. 1994) (quoting <u>Nance v. Kelly</u>, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting)). "'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. <u>Smith v. Carpenter</u>, 316 F.3d 178, 184 (2d Cir. 2003) (quoting <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992)). Because there is no bright-line rule to determine whether a medical condition is sufficiently serious, the Second Circuit has identified several factors that are highly relevant to the inquiry such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.' " <u>Brock v. Wright</u>, 315 F.3d 158, 162–63 (2d Cir. 2003) (citing and quoting <u>Chance v. Armstrong</u>, 143 F.3d 698, 702 (2d Cir. 1998) (internal citation omitted)).

Under the subjective element, a prison official acts with a culpable state of mind when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837.

"Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm." Hathaway, 37 F.3d at 66 (citation omitted). To assert a claim for deliberate indifference, an inmate must allege that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. Farmer, 511 U.S. at 837; Chance, 143 F.3d at 702. "[M]ere disagreement over proper treatment does not create a constitutional claim . . . " as long as the treatment was adequate. Chance, 143 F.3d at 703. Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a section 1983 claim." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F.Supp.2d 303, 312 (S.D.N.Y. 2001).

In this case, even assuming that Coffeey's mental condition was a "serious medical condition" sufficient to establish the objective element of the Eighth Amendment analysis, Coffeey's conclusory allegation that "he did not see a doctor regularly," is not supported by admissible proof. Coffeey does not present any evidence that he requested and was denied medical treatment. Indeed, the record belies Coffey's claim and establishes that Coffeey was treated by physicians and nursing staff, and continually monitored by SCTAs during his four day confinement in the side room. Dkt. No. 25 at 7, 15-19, 25-26, 28-57; Dkt. No. 26 at 39-51; Dkt. No. 26-1 at 2-10, 13, 16-18, 25, 31. During an examination by Dr. Elizabeth Farnum on June 3, 2013, Coffeey complained that he did not see a doctor but when he was asked why he needed to be seen, Coffeey stated that he did not request a doctor and that he was not experiencing any problems. Dkt. No. 26-1 at 21. Coffeey's "dissatisfaction" with his level of care and course of treatment does not support a finding of deliberate

indifference.  See Soto v. Wright, No. 11 Civ. 2289, 2013 WL 474291, at *5 (S.D.N.Y. Feb. 1, 2013) (citations omitted).

Moreover, Coffeey does not present any evidence from which a reasonable fact finder could conclude that defendants acted with a "sufficiently culpable mental state."  Salahuddin v. Goord, 467 F.3d 263, 282 (2d Cir. 2006) (citation omitted).  Coffeey does not identify any physician, health care provider or any other individual responsible for any delay or deprivation of medical treatment.  There is no evidentiary support for any medical indifference claim against Hollenbeck or Gonzalez.  The record lacks any evidence establishing that either defendant was personally involved in any decision related to Coffeey's medical care during his four-day confinement to the side room.[22]  Accordingly, the undersigned recommends that defendants' motion for summary judgment on this ground be granted.

### 4.  Excessive Force

Coffeey claims that on June 10, 2013, Hollenbeck slammed his head into a window screen and put his hands on Coffeey's throat.[23]  See Dkt. No. 26 at 7-8.

---

[22] To the extent that Coffeey's complaint could be construed as asserting a supervisory claim against Gonzalez, that claim is discussed infra.

[23] The Court notes that this allegation is contained in a statement, signed by Coffeey, and dated June 12, 2013, submitted by defendants as an exhibit to the affirmation of Colleen Galligan, counsel for defendants.  Dkt. No. 26 at 7-8.  Coffeey did not raise an allegation of excessive force in his complaint.  The Court notes that there is caselaw in this Circuit declining to address claims that are not properly raised in the complaint or other submissions by the plaintiff.  See Wright v. Goord, 554 F.3d 255, 267 (2d Cir. 2009) (stating that the plaintiff could not add a cause of action by "simply appending [the] claim to his second amended complaint");  Tafari v. McCarthy, 714 F. Supp. 2d 317, 358 n.17 (N.D.N.Y. 2010) (declining to address verbal abuse where the allegation was contained in a grievance, but not raised in the plaintiff's amended complaint or at his deposition).  Nonetheless, the Court will address this claim based on the evidence before it.

Inmates enjoy an Eighth Amendment protection against the use of excessive force and may recover damages for its violation under § 1983. Hudson, 503 U.S. at 9-10. The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain." Gregg v. Georgia, 428 U.S. 153, 173 (1976); Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000). To bring a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements. Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999).

The objective element is "responsive to contemporary standards of decency" and requires a showing "that the injury actually inflicted is sufficiently serious to warrant Eighth Amendment protection." Hudson, 503 U.S. at 9 (internal citations omitted); Blyden, 186 F.3d at 262. However, "the malicious use of force to cause harm [] constitute[s an] Eighth Amendment violation *per se*[,]" regardless of the seriousness of the injuries. Blyden, 186 F.3d at 263 (citing Hudson, 503 U.S. at 9). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10 (internal quotation marks and citations omitted). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Sims, 230 F.3d at 22 (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." Sims, 230 F.3d at 21 (internal quotation marks and citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically

to cause harm.'" Id. (quoting Hudson, 503 U.S. at 7). In determining whether a defendant acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: "the extent of the injury and the mental state of the defendant[;] . . . the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and citations omitted).

In this case, Coffeey fails to satisfy either prong of the analysis. In viewing the facts in the light most favorable to Coffeey, the evidence fails to establish that he suffered any injury as a result of the alleged altercation with Hollenbeck. Indeed, Coffeey does not plead that he sustained any injury as a result of the alleged altercation. The progress notes and daily logs for June 10, 2013 do not contain any reference to any injury that Coffeey allegedly sustained and there is no medical record of any assault. Dkt. No. 25-1 at 15-17, 19-21; Dkt. No. 26 at 15.

With respect to the subjective prong, the credible evidence fails to establish that Hollenbeck acted with a culpable state of mind. Hollenbeck asserts that he did not work on Ward 405 on June 10, 2013 and denies that the incident occurred at any time.[24] Hollenbeck Decl. ¶¶ 23-26, 28. Even assuming that Hollenbeck was present on the day in question, the record lacks any evidentiary support for Coffeey's general accusations. The progress notes and daily logs for June 10, 2013 do not contain any reference to any assault or incident involving Hollenbeck. Dkt No. 25-1 at 15-17, 19-22; Dkt. No. 26 at 15. Coffeey concedes

---

[24] See n.21, supra.

23

that there were no witnesses to the alleged occurrence. Dkt. No. 26 at 8. "Conclusory allegations, conjecture, and speculation . .. are insufficient to create a genuine issue of fact." Ketzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998) (citing D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998)).  In viewing the record in a light most favorable to Coffeey, the lack of evidence with respect to Hollenbeck's conduct, coupled with the absence of any injury, fails to present a triable issue of fact for a jury to resolve.  Accordingly, the undersigned recommends that defendants' motion for summary judgment on this ground be granted.  See Phelps v. Szubinski, 577 F.Supp.2d 650, 663 (E.D.N.Y. 2008) (granting summary judgment on excessive force claim where the plaintiff failed to establish that he sustained a physical injury as a result of the officer's conduct); see also Patterson v. City of N.Y., No. 14-cv-5330 (PKC), 2015 WL 8362702, at *5 (S.D.N.Y. Dec. 8, 2015) ("Because the defendants have come forward with evidence that they were not in the vicinity of [the plaintiff] at the time that he allegedly was subjected to excessive force, and because [the plaintiff] raises only conclusory arguments in opposition, [the plaintiff] has failed to satisfy his burden to oppose summary judgment."); Applegate v. Annucci, No. 9:02-CV-0276 (LEK/DEP), 2008 WL 2725087, at *18 (N.D.N.Y. July 10, 2008) (awarding summary judgment on excessive force claim where the plaintiff failed to file any response to the defendant's motion and the record lacked any evidence from which a reasonable juror could conclude that the defendant used excessive force).

### C.  Verbal Threats

Coffeey claims that Hollenbeck threatened to "take [Coffeey] out in a body bag." See Dkt. No. 1 at 4.  To the extent Coffeey attempted to allege a potential Fourteenth

Amendment claim against Hollenbeck for making verbal threats, such a claim must fail.  A claim of threats and harassment alone, without allegations of accompanied injury or use of force, is insufficient to state an Eighth Amendment claim. See Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1996) (per curiam) ("The claim that a prison guard called [the plaintiff] names also did not allege any appreciable injury and was properly dismissed."); Aziz Zarif Shabazz v. Pico, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) ("[V]erbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem does not constitute the violation of any federally protected right and therefore is not actionable under . . . § 1983." (internal quotation marks and citations omitted)).  Because the undersigned has recommended dismissal of Coffey's excessive force allegation against Hollenbeck, Coffey's potential claim based on verbal threats against Hollenbeck cannot survive.

Accordingly, it is recommended that Coffey's claim based on verbal threats be dismissed and summary judgment awarded to defendants on this ground.

### D.  Supervisory Liability

Supervisory officials may not be held liable merely because they held a position of authority.  Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation[;]
>
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong[;]
>
> (3) the defendant created a policy or custom under which

> unconstitutional practices occurred, or allowed the
> continuance of such a policy or custom[;]
>
> (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts[;] or
>
> (5) the defendant exhibited deliberate indifference to the rights
> of inmates by failing to act on information indicating that
> unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Wright v. Smith, 21 F.3d 496, 501

(2d Cir. 1994)).

Writing letters and grievances to a defendant is insufficient to establish notice and

personal involvement. Smart v. Goord, 441 F.Supp.2d 631, 643 (S.D.N.Y. 2006)

("Commissioner . . . cannot be held liable on the sole basis that he did not act in response to

letters of protest sent by [plaintiff]. . . ."). Also, it is within the purview of a superior officer to

delegate responsibility to others. See Vega v. Artus, 610 F. Supp. 2d 185, 198 (N.D.N.Y.

2009) (finding no personal involvement where "the only involvement of the supervisory

official was to refer the inmate's complaint to the appropriate staff for investigation") (citing

Ortiz–Rodriguez v. N.Y. State Dep't of Corr. Servs., 491 F. Supp. 2d 342, 347 (W.D.N.Y.

2007)).

Absent an underlying constitutional violation by a subordinate, there can be no

supervisory liability. Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003); see Elek v. Inc.

Vill. of Monroe, 815 F. Supp. 2d 801, 808 (S.D.N.Y. 2011) (collecting cases for the

proposition that "because [p]laintiff has not established any underlying constitutional

violation, she cannot state a claim for 1983 supervisory liability").

Here, construing the complaint liberally, Coffey alleges that Dorr notified Gonzalez of

constitutional violations and that Gonzalez failed to remedy the alleged violations. Compl. at

4, 9-13.  Coffeey does not allege, nor does the record support the conclusion that Gonzalez

directly participated in any alleged constitutional violations.  Gonzalez concedes that he

received Dorr's letters and referred Dorr's concerns to staff members.  Gonzalez Decl. ¶¶

13-14, 17-18.  Gonzalez's responses to Dorr denying Coffeey's accusations are insufficient

to establish personal involvement in any incident.  See Joyner v. Greiner, 195 F. Supp. 2d

500, 506 (S.D.N.Y. 2002).  Gonzalez's actions do not equate to "personal involvement" in

any alleged violations.  See Vega, 610 F. Supp. 2d at 198 (finding that a supervisor is not

"personally involved" because he delegated investigation of an incident to a subordinate).

Moreover, as discussed supra, Coffeey failed to raise an issue of material fact with

respect to his Fourteenth Amendment claims.  Accordingly, the undersigned recommends

that defendants' motion for summary judgment and dismissal of Coffeey's supervisory

claims against Gonzalez be granted.


### E.  Qualified Immunity

Defendants argue that even if Coffeey's claims are substantiated, they are nevertheless

entitled to qualified immunity.  Qualified immunity generally protects government officials

from civil liability "insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald,

457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002)

(McAvoy, J.), aff'd 80 F. App'x 146 (2d Cir. 2003).  However, even if the constitutional

privileges "are so clearly defined that a reasonable public official would know that his actions

might violate those rights, qualified . . . immunity might still be available . . . if it was

objectively reasonable for the public official to believe that his acts did not violate those

rights." <u>Kaminsky v. Rosenblum</u>, 929 F.2d 922, 925 (2d Cir. 1991) ( citing <u>Magnotti v. Kuntz</u>, 918 F.2d 364, 367 (2d Cir. 1990)) (additional citation omitted).  A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation.  <u>Pearson v. Callahan</u>, 555 U.S. 223, 232 (2009).  Only if there is a constitutional violation does a court proceed to determine whether constitutional rights were clearly established at the time of the alleged violation.  <u>Id.</u> at 236.

Here, the second prong of the inquiry need not be addressed with respect to Coffeey's claims because, as discussed <u>supra</u>, it has not been shown that defendants violated Coffeey's constitutional rights.  Accordingly, in the alternative, it is recommended that defendant's motion on this ground be granted.


## IV.  CONCLUSION

For the reasons stated above, it is hereby:

**RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 24) be

**GRANTED** in all respects as to all claims and defendants; and it is further

**ORDERED** that the Clerk serve a copy of this Report-Recommendation and Order on

the parties in accordance with Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  <u>Roldan v. Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993); <u>Small v. Sec'y of HHS</u>, 892 F.2d 15 (2d Cir. 1989); <u>see</u> <u>also</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a),

6(e).

DATED:     January 27, 2016
              Albany, New York

Christian F. Hummel
U.S. Magistrate Judge